# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1. TAMMY HOLMES, individually, and as Personal Representative of the Estate of Travis Holmes, Deceased,<br><br>Plaintiff,<br><br>vs.<br><br>2. JONATHAN HEGWOOD; an individual,<br>3. PEOPLE'S MOSS GIN COMPANY, INC.; and<br>4. NATIONWIDE AGRIBUSINESS INSURANCE COMPANY,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No. CIV-05-1036-F<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## ORDER

This matter comes before the court upon the motion of defendants Jonathan Hegwood and Peoples Moss Gin Company, Inc. ("PMG") for partial summary judgment, filed April 27, 2006 (doc. no. 52). The plaintiff, Tammy Holmes, has responded to the motion, and the defendants have replied. After careful consideration of the parties' submissions, the record, and all relevant arguments and authorities, the court makes its determination.

### Summary Judgment Standard

Summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), Fed. R. Civ. P. The moving party has the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 249 (1986).  In determining whether a genuine issue of material fact exists, the court must review the record in the light most favorable to the party opposing summary judgment.  National Aviation Underwriters, Inc. v. Altus Flying service, Inc., 555 F.2d 778, 784 (10th Cir. 1977).

## Nature of the Case

On January 4, 2005, Travis Holmes died from injuries he sustained when the pick-up truck he was driving collided with a tractor-trailer driven by defendant Jonathan Hegwood, an employee of defendant PMG.  At the time of his death, Travis Holmes was married to the plaintiff, Tammy Holmes.  Ms. Holmes is the mother of two children from a previous marriage.  Those children are both minors and will, therefore, be identified in this order only as M.K. and D.K.  Although M.K. and D.K. lived with, and were supported by, Travis Holmes, Travis Holmes never legally adopted them.  Although M.K. and D.K.'s biological father was under a court order to pay for their support, prior to the death of Travis Holmes, he rarely made his child support payments.  No collection action was ever instituted against him.

Ms. Holmes filed a negligence action in the District Court for Kay County, Oklahoma, seeking compensatory and punitive damages against Jonathan Hegwood and PMG.  She also sought damages on behalf of M.K. and D.K. for the injuries they suffered as a result of Travis Holmes' wrongful death.  The defendants removed the action to this court and assert that they are entitled to summary judgement in their favor on Ms. Holmes' claims for punitive damages and on her wrongful death claim brought on behalf of M.K. and D.K.  The defendants also contend that Ms. Holmes has abandoned claims she appeared to be asserting for alleged economic losses to Travis Holmes' employer, Younger Electric, and for economic losses related to Travis Holmes' lost opportunity to purchase Younger Electric.  Pursuant to its order entered May 15, 2006, the court has held the punitive damages issue in abeyance pending the

completion of discovery by the parties. Thus, the only issues before the court are whether Ms. Holmes may assert a wrongful death claim on behalf of M.K. and D.K., and whether she has abandoned her claims for (i) economic loss sustained by Younger Electric and (ii) economic loss arising from Travis Holmes' lost opportunity to purchase Younger Electric.

I. <u>Unadopted Stepchildren as Beneficiaries Under Oklahoma's Wrongful Death Provisions</u>

Oklahoma's wrongful death statute, 12 O.S. Supp. 2005 § 1053, permits a decedent's children to recover damages for the mental pain and anguish suffered by the decedent, for their pecuniary loss, and for their grief and loss of companionship. In proper cases, they may also recover punitive or exemplary damages. For purposes of the statute, the term "children" is to be understood as including "children by birth and by adoption." 25 O.S. 2001 §§ 1, 7. Thus, the plain language of Oklahoma's wrongful death statute omits unadopted stepchildren from the class of persons entitled to recover damages for the wrongful death of their stepparents.

Ms. Holmes urges the court to look beyond the plain language of the statute. She argues that Oklahoma law does recognize the wrongful death claims of unadopted stepchildren in instances where the decedent stood in loco parentis to the unadopted stepchildren. In support of her contention, she cites 10 O.S. 2001§ 15 which states:

> A husband is not bound to maintain his wife's children by a former husband; but if he receives them into his family and supports them, it is presumed that he does so as a parent, and where such is the case, they are not liable to him for their support, nor he to them for their services.

The Oklahoma Supreme Court has relied upon that statutory provision to buttress its conclusion that, like natural parents, stepparents are immune to negligence suits brought against them by their minor stepchildren to whom they stood in loco parentis. *See* <u>Workman v. Workman</u>, 1972 OK 74, 498 P.2d 1384 ("public policy and

the best interests of society forbids an unemancipated minor child to appear in court and assert a claim for personal injuries suffered at the hands of a parent"); *see also* Wooden v. Hale, 1967 OK 69, 426 P.2d 679.  The plaintiff argues this indicates that the "intent and function of 10 O. S. § 15 is to place a stepchild and stepparent in the same position as a natural child and parent."  This court does not agree with the expansive interpretation proposed by plaintiff.  This provision merely recites that a stepparent who voluntarily undertakes the support of his stepchildren is presumed to do so gratuitously.  There is nothing in the statute or its history to suggest the legislature intended, by its enactment, to amend the statutory definition of "children."

The plaintiff has not cited, and the court's research has not revealed, any cases holding an unadopted stepchild to be entitled to recover damages under 12 O.S. § 1053 or another state's similar provision.  In fact, it appears that the majority of courts addressing the question of a stepchild's entitlement to benefits under wrongful death statutes similar to Oklahoma's found no such entitlement. *See* Brown v. Brown, 309 S.E.2d 586 (Va. 1983) (adopting the "majority rule" that unadopted stepchildren are not "children" for purposes of wrongful death statutes); Steed v. Imperial Airlines, 524 P.2d 801 (Cal. 1974); Klossner v. San Juan County, 586 P.2d 899 (Wash. App. 1978) (applying the "uniform rule" that unadopted stepchildren are not proper beneficiaries unless the wrongful death statute specifically provides otherwise).  The same result has been reached in cases where the deceased stood in loco parentis to the claimant. *See* Klossner at 902; *see also* Soloman v. Harman, 489 P.2d 236 (Ariz. 1971) (foster parents seeking damages for wrongful death of foster child to whom they stood in loco parentis); Robinson v. Chiarello, 806 S.W.2d 304, 310 (Tex.App. 1991) (aunt and uncle who stood in loco parentis did not fall within list of beneficiaries under wrongful death statute).

The plaintiff places undue reliance upon a single case which upheld an award of damages to a stepchild to whom the decedent stood in loco parentis. In Moon Distributors, Inc., et al. v. White, 434 S.W.2d 56 (Ark. 1968), however, the court was charged with interpreting Arkansas' wrongful death statute which specifically included "persons to whom the deceased stood in loco parentis" as beneficiaries. *See* Moon Distributors at 633 (quoting Ark. Stat. Ann. § 27-909). The Oklahoma legislature has made no such provision.

It is undisputed that Travis Holmes was neither the biological nor the legally adoptive father of M.K and D.K. The defendants' motion for summary judgment on the plaintiff's wrongful death claims asserted on behalf of M.K. and D.K. should, therefore, be granted.

II. Economic Losses Related to Younger Electric

Defendants Jonathan Hegwood and PMG contend that the plaintiff has abandoned the claim she previously asserted for economic losses incurred by Travis Holmes' employer, Younger Electric, as a result of Mr. Holmes' death. At the hearing which was held in this action on June 30, 2006, Ms. Holmes made it clear, through her counsel, that she has abandoned her claim for economic losses allegedly suffered by Younger Electric. That effectively moots the present motion insofar as the present motion attacks Ms. Holmes' right to assert that claim. That claim is no longer involved in this case.

The defendants further contend that Ms. Holmes has effectively abandoned any claim for economic losses attributable to Travis Holmes' lost opportunity to purchase Younger Electric. They allege that Ms. Holmes' experts failed to provide calculations regarding such claim and that, without expert testimony, the claim cannot be established. Ms. Holmes argues that she has not abandoned the claim. She maintains that the parties mutually agreed to postpone discovery on the issue.

The court's review of the record indicates that neither of Ms. Holmes' experts, Dr. Will Clark or Lon Huff, have offered a quantification of the amount of the loss allegedly resulting from Travis Holmes' lost opportunity to purchase Younger Electric.  (Mr. Huff stated in his report that the fact that Mr. Holmes lost that opportunity makes his conventional calculation of lost future wages conservative, but he ventured no estimation of the amount that Mr. Holmes might have earned as the proprietor of the enterprise.)  A claim for lost profits arising from the loss of an opportunity to pursue an entrepreneurial venture upon which the decedent had not embarked would seem (among other things) to require supporting expert testimony.  For that reason, it does not appear likely that plaintiff will be permitted to assert any such claim at trial.  However, the motion for summary judgment seeks to eliminate that claim on the basis that it has been abandoned.  Plaintiff denies that the claim has been abandoned, and the record does not definitively resolve that conflict one way or the other.  For that reason, and because the summary judgment motion offers no *substantive* basis for granting summary judgment on the lost opportunity claim, summary judgment will be denied as to that claim.  However, the parties should be mindful that the court's denial of summary judgment on the lost opportunity claim is a far cry from a determination that that claim will be viable for trial purposes.

## Conclusion

Based upon the foregoing, summary judgment is **GRANTED** in favor of defendants Jonathan Hegwood and PMG with regard to Ms. Holmes' wrongful death claim brought on behalf of M.K. and D.K.  The motion is **DENIED** as moot with respect to the claim for recovery of economic loss sustained by Younger Electric.  The

motion is **DENIED** as to the claim for economic loss arising from Travis Holmes' lost opportunity purchase Younger Electric.[1]

ENTERED this 27th day of July, 2006.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

05-1036p018(pub).wpd

---

[1] For the reasons set forth on pages 2 and 3, above, Proposition I, relating to punitive damages, is not addressed in this order. Although the court does not foreclose the possibility, disposition of plaintiff's punitive damage claim as a matter of law, on a motion for summary judgment, may be a tall order. If defendants desire to press their motion as to Proposition I, they shall file a notification to that effect not later than August 2, 2006. If no such notification is filed by that date, the motion shall be deemed withdrawn as to Proposition I, and the matter of submissibility of punitive damages will be determined at trial, as is usually the case. If defendants file such a notification, plaintiff shall respond to Proposition I not later than August 14, 2006.